UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HEATHER McLEOD (formerly Wright),
individually and as next friend for CPW, a
female minor, SPW, a male minor and KEW,
a female minor,

        Plaintiffs,

v.                                                                                                 Case No. 1:15-CV-639

MICHAEL BENJAMIN, MICHAEL SALMEN,                      HON. GORDON J. QUIST
KEVIN ROD, ROBERT BILACIC, DAVID
BOWER, THOMAS DRAVES, JAMES LASS,
ANDREW BUCKHOLTZ, UNKNOWN CMET
OFFICER #1, UNKNOWN CMET OFFICER #2,
UNKNOWN CMET OFFICER #3,

        Defendants.
_____/

## OPINION REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### I. STATEMENT OF FACTS

**A.  Obtaining the Warrant**

On June 20, 2012, Defendant Andrew Buckholtz obtained a warrant to search the residence at 4602 Charles Road in Ionia County and all vehicles, outbuildings, and camping trailers located on the property. (ECF No. 39-4 at PageID.432.) The warrant authorized a search for Robert Conley, a suspected methamphetamine manufacturer and distributor, as well as fruits and instrumentalities of a medical marijuana grow operation. (*Id*.)

Buckholtz's affidavit was based primarily on information provided to Buckholtz by Detective Sergeant Morey. (*Id*.) Paragraph M[1] of the affidavit seems to state that a Confidential

---

[1] "On 06/20/2012, Det. Morey of the Michigan State Police Ionia Post had contact with a confidential source regarding the location of ROBERT CONLEY. The CS advised that he/she [sic] CONLEY was at the residence of 4602 Charles Rd [sic] ON NIGHT OF 06/19/2012. CS advised that CONLEY is hiding out in a trailer in the back yard of the WRIGHT residence at 4602 Charles Rd. [sic]" (ECF No. 39-4 at PageID.435.)

Source (CS) told Detective Morey about Conley and the marijuana, and that Detective Morey relayed this information to Buckholtz, who then relayed it to the State magistrate. Paragraphs P through U detail what the CS "advised," but Buckholtz does not claim to have heard this information first hand. In Paragraph Z[2] Buckholtz claims to have personally interviewed the CS, and Buckholtz gives no detail as to what the CS may have said in an interview.

A magistrate issued the warrant, and Morey contacted Defendant Detective/Sergeant Michael Benjamin of the Michigan State Police and requested an Emergency Support Team (EST) to aid in the execution of the warrant. (ECF No. 44-8 at PageID.774.)

**B.     Execution of the Warrant**

Morey, Buckholtz, and Benjamin briefed the Michigan State Police EST members. (ECF No. 45-3 at PageID.8 44.) Benjamin and Bower both read the warrant. (ECF No. 45-2 at PageID.819 and ECF No. 44-8 at PageID.778.) None of the other Defendants read the warrant or affidavit. The EST consisted of

- Defendant MSP Detective/Sergeant Michael Benjamin – "Call leader" for the raid; gathered team and briefed them before executing the warrant; carried a shotgun on the raid; appears to be the eighth member to enter the house on the video footage.

- Defendant MSP Trooper Robert Bilacic – "Sub 4"; carried a carbine or submachinegun on the raid. (ECF No. 45-1 at PageID.799.)

- Defendant MSP Lieutenant David Bower – Unit commander; did not carry a long gun or a shield during the raid. (ECF No. 45-2 at PageID.826.)

- Defendant MSP Lieutenant Draves – "Sub 3"; carried a carbine or submachinegun on the raid. (ECF No. 45-3 at PageID.845)

- Defendant MSP Trooper Carlos Fossati – "Hands"; carried a ram tool on the raid. Not named as a defendant. (ECF No. 45-4 at PageID.858.)

---

[2]"Based on my [Buckholtz's] interview with CS and past contacts with Conley, it is believed that there will still be evidence located at the location related to the manufacturing of methamphetamine and marijuana."." (ECF No. 39-4 at PageID.437.)

- Defendant MSP Lieutenant James Lass – "Shield 2"; carried a shield on the raid.  (ECF No. 45-5 at PageID.869.)

- Defendant MSP Lieutenant Kevin Rod – "Hands"; did not carry a long gun or shield during the raid.  (ECF No. 45-6 at PageID.882.)

- Defendant MSP Sergeant Michael Salmen – "Shield 1"; carried a shield on the raid.  (ECF No. 45-7 at PageID.893.)

- Sergeant MSP Brain Keely – "Perimeter"; wore a ghillie hat and carried a rifle on the raid.  Not named as a defendant.

The EST executed the warrant early in the morning of June 21, 2012.  The team first located Conley in a trailer on the property and secured him with handcuffs.  (ECF No. 45-4 at PageID.857.)  The team then moved in to search the Wright residence itself.  McLeod and her three children were in the house at the time.  Plaintiff SPW is McLeod's son and was about eight years old; he was asleep in his own room when the EST entered the house.  (ECF No. 44-5 at PageID.727.)  Plaintiff CPW is McLeod's oldest daughter, and was eleven years old; she was asleep in her room with KEW at the time of the search.  (ECF No. 44-1 at PageID.644.)  Plaintiff KEW is McLeod's youngest daughter; two years old at the time of the search. (*Id*.)

The team entered the house through an unlocked sliding door on the porch and almost immediately encountered McLeod in the living room of the house.  (ECF No. 44-1 at PageID.643.)  An unidentified member of the team ordered McLeod to lie face down on the ground; she complied and a team member cuffed her hands behind her back.  (*Id*.)  Other members of the team continued to search the rest of the house.  Some number of the Defendants entered SPW's room.  (ECF No. 44-5 at PageID.736.)  One of these Defendants pulled SPW from his bed and pushed SPW against a wall in his room.  (*Id*.)  CEW and KPW emerged from their room and joined McLeod in the living room area.  (ECF No. 44-1 at PageID.644.)  SPW came out of his room and entered the living room shortly thereafter.  (*Id*.).

3

McLeod testified that she was lying face-down on the ground with her hands cuffed behind her back when a member of the EST pulled her wrists upwards to lift her up to her feet. (ECF No. 44-1 at PageID.635; 644.) McLeod was unable to identify the specific person who pulled on her wrists, only recalling that the person was wearing black, did not have camouflage, and was holding a weapon, rather than a shield. (*Id*. at PageID.670.) The pulling on her wrists caused a great deal of pain in her shoulder. (*Id*. at PageID.669.)

SPW testified that he saw a policeman "help her up" off of the ground, but did not see if this caused any kind of injury or pain. (ECF No. 44-5 at PageID.746.)

Defendant Bower testified that he never saw anyone actually cuff McLeod or pull her up from the ground, but that he saw Defendant Benjamin "addressing" and "securing" her. "At some point [Benjamin] had to put flex cuffs or cuffs of some type on [McLeod]. And then [Benjamin] moved [McLeod] from the floor to the couch upon [Bower's] direction." (ECF No. 45-2 at PageID.827.) None of the other officers recalled who handcuffed McLeod, who helped her to her feet, or what, if any, injury this caused. (ECF No. 44-8 at PageID.782; ECF No. 45-1 at PageID.811; ECF No. 45-3 at PageID.850; ECF No. 45-4 at PageID.863; ECF No. 45-5 at PageID.872; ECF No. 45-6 at PageID.883; ECF No. 45-7 at PageID.895.)

This same Defendant directed McLeod to sit on a couch and removed her handcuffs. McLeod and the three children remained on the couch while the team finished clearing the house. (*Id*. at PageID.645.) Other investigators moved into the house to continue executing the search, and the EST moved out. The EST Defendants spent a total of about ten minutes inside the Wright residence. (ECF No. 44-3 at PageID.688.)

## II.  CLAIMS AGAINST DEFENDANT BUCKHOLTZ

A.  **Unreasonable Search – Invalid Warrant**

Count I of the complaint, on behalf of all Plaintiffs against all Defendants, alleges that the search of the Wright residence was unreasonable and in violation of the Fourth Amendment.  (ECF No. 1 at PageID.10.)  Specifically, Plaintiffs allege that the warrant was invalid due to a flawed affidavit and the search was otherwise without probable cause or an exception to the warrant requirement.  (*Id*.)  Defendant Buckholtz argues that Plaintiffs' claims are *Heck*-barred, and that Buckholtz is otherwise entitled to qualified immunity. (ECF No. 32 at PageID.210.)

1.  *Heck* **Analysis**

"[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been" invalidated in some way. *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372 (1994) (footnote omitted).  A plaintiff is entitled to an exception to *Heck*'s "favorable-termination" requirement if he or she "was precluded 'as a matter of law' from seeking habeas redress."  *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 601 (6th Cir. 2007) (citing *Guerrero v. Gates*, 442 F.3d 697, 705 (9th Cir.2006)).  A plaintiff can be precluded from seeking habeas redress where, as here, he or she is only incarcerated for a very brief time. *Id.* at 603.  McLeod need not satisfy *Heck* because she only spent a single day in jail, paid a fine, and did not receive probation.  (ECF No. 44-1 filed at PageID.631.)  *See Id.* (plaintiff not barred from asserting Fourth Amendment claim under *Heck* when plaintiff only spent between one and thirty days in custody.)

*Heck* is inapposite as to CPW, SPW, and KEW.  The children were not even charged with a crime and, therefore, cannot have a conviction invalidated.

5

### 2. Qualified Immunity

Buckholtz is entitled to qualified immunity because any misrepresentations he made were not material. To overcome a claim of qualified immunity by an officer who applied for a search warrant, plaintiffs must make "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth, and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)). To satisfy the materiality requirement, a plaintiff "must show that the judge would not have issued the warrant without the allegedly false" information. *Id.*

The substantive parts of the affidavit describe the information Buckholtz learned from Morey, and that Morey had learned the information from a CS. That is, the affidavit describes two "levels" of hearsay. Buckholtz's statement that he personally interviewed the CS comes at the very end of the affidavit, and he does not describe what information, if any, he learned from the CS. The claim neither adds to nor detracts from any other part of the affidavit – it simply appears as an appendage. The magistrate issued the warrant based on the CS's hearsay through Morey. Buckholtz's claim could not be necessary to the finding of probable cause.

### B. Unreasonable Seizure of Property

Count III alleges that the seizure of McLeod's grow lights, fans, scales, tax records, cell phone and currency was unreasonable, because Buckholtz "had no basis to believe that any state law violation had occurred" because "he was aware of Plaintiff's compliance with state law and the immunity afforded to her." (ECF No. 1 at PageID.13.) This argument fails because possession, manufacture, and distribution of marijuana is still illegal under both Michigan and federal law.

*United States v. Ellis*, 910 F. Supp. 2d 1008, 1017 (W.D. Mich. 2012) (citing *People v. King*, 291 Mich. App. 503, 508-09, 804 N.W.2d 911, 914–15 (2011)).

McLeod advances another theory of liability in her response brief by alleging a state law conversion claim rather than the Fourth Amendment violation that appears in the complaint. (ECF No. 39 at PageID.343.) McLeod has conceded that this theory of liability should fail because "she cannot prove that Defendant Buckholtz was present or that he eventually seized the property," and only presents argument "for purposes of preserving the issue." (*Id*.)

### III. CLAIMS AGAINST THE EST DEFENDANTS

**A.**     **Unreasonable Search – Invalid Warrant**

Count I of the complaint alleges that the search of the Wright residence was unreasonable and in violation of the Fourth Amendment because "[n]o reasonably trained and experienced police officer would have relied on the search warrant" or believed that the search of the Wright residence was lawful. (ECF No. 1 at PageID.11.) Plaintiffs cite *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004), and *Cline v. City of Mansfield*, 745 F. Supp. 2d 773 (N.D. Ohio 2010), for the proposition that officers executing a search warrant must read and make an independent evaluation of the affidavit underlying the warrant. (ECF No. 50 at PageID958).

Defendants are entitled to qualified immunity because it was not clearly established at the time of the search that officers need to review the affidavit. The Supreme Court issued *Messerschmidt v. Millender*, — U.S. —, 132 S. Ct. 1235 (2012), in February of 2012, after the cases cited by the Plaintiff but before the execution of the warrant). *Messerschmidt* suggests that officers must review the warrant itself for "glaring deficiencies," but need not read the underlying affidavit.

7

*Id*. at 1250.  Even assuming that the Plaintiffs' reading of *Cline* and *Washington* is correct, it was not clearly established at the time of the search that the Defendants needed to read the affidavit.[3]

**B.      Unreasonable Search – Execution**

Count II alleges that Defendants' search was unreasonable because (1) Defendants failed to knock and announce, and (2) at least one Defendant pointed a gun at McLeod.  (ECF No. 1 at PageID.12-13.)

   **1.   No-Knock Entry**

Defendants are entitled to qualified immunity on the no-knock entry because it would have been reasonable for the officers to believe that there were exigent circumstances.  Generally, no-knock entries must be justified by exigent circumstances such as concern for officer safety, hot pursuit of a fleeing suspect, or potential destruction of evidence.  *See Thornton v. Fray*, 429 F. App'x 504, 510 (6th Cir. 2011) (citing *Hall v. Shipley*, 932 F.2d 1147, 1151 (6th Cir. 1991)). The officers testified that they did not have a lot of information about the occupants, were not sure how any of the occupants would react to the search, and still had not located all of Conley's weapons.  Even if Defendants' belief as to the exigent circumstances is a "close question, the officers are entitled to the benefit of the doubt under the qualified immunity standard." *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996) (citing *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537 (1991)).

   **2.   Pointing Weapons at McLeod**

Defendants are entitled to qualified immunity as to the pointing of a weapon at McLeod. Pointing weapons at a detainee for a brief period of time during the execution of a search warrant

---

[3]It is the magistrate's responsibility to read the affidavit and make a judgment.  This Court cannot determine what Defendant fellow officers are supposed to do when he or she reads the affidavit for truthfulness - cross examine the affiant, bring in new evidence, demand further investigation before following orders, contradict the conclusions of the affiant - what?

8

is not unreasonable and in violation of the Fourth Amendment. *See Los Angeles Cnty. v. Rettele*, 550 U.S. 609, 127 S. Ct. 1989 (2007).

**C.     McLeod Excessive Force Claim**

Count V of the complaint alleges that one of the Defendants used excessive force on McLeod by pulling on her wrists while she was handcuffed and lying on the floor. (ECF No. 1 at PageID.9.) Defendants moved for summary judgment because (1) they are entitled to qualified immunity, (2) McLeod is unable to identify which of the several Defendants injured her. (ECF No. 42 at PageID.470.)

**1.     Qualified Immunity**

**(a)     *Clearly Established Right***

It is clearly established law that "the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others" violates the Fourth Amendment. *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) (citing *Grawey v. Drury*, 567 F.3d 302 (6th Cir.2009)); *see also Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 404 (6th Cir. 2009) ("[U]se of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." (internal quotation marks omitted)).

**(b)     *Violation***

Taken in the light most favorable to the Plaintiff, the facts establish a violation because McLeod was handcuffed, compliant, and not otherwise threatening violence. *See, e.g. Vance v. Wade*, 546 F.3d 774, 783-84 (6th Cir. 2008) (defendant not entitled to qualified immunity when, after securing arrestee and defusing situation, he pulled up on arrestee's handcuffs while shoving him downward onto floorboard of police vehicle); *Williams-Turk v. Bazzy*, No. 09-14786, 2011 WL 2837618, at *6 (E.D. Mich. July 18, 2011) (defendant not entitled to qualified immunity when he

9

allegedly pulled plaintiff off of a porch "by her handcuffs, by yanking and pulling her up to her feet by her handcuffs as she started to fall, by pulling her by the arm and/or handcuffs while leading her to the patrol car, and by roughly shoving her in the police car").

### 2. **Individual Liability**

Defendants' "'liability must be assessed individually based on [their] own actions.'" *Pollard v. City of Columbus,* 780 F.3d 395, 402 (6th Cir.), (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)), *cert. denied*, 136 S. Ct. 217 (2015). "As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi v. Police Dep't of the City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984) (citations omitted). A plaintiff "must prove that the [defendant] (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against excessive force" and failed to intervene to prevent the use of force. *Pollard,* 780 F.3d at 402 (internal quotation marks omitted).

#### (a) *Active Participation*

Defendants Lass, Salmen, Rod, Bower, and Fossati are entitled to summary judgment because they do not meet McLeod's description that the accused officer had on body armor and carried a long gun. Lass and Salmen carried shields. Rod, Fossati, and Bower do not meet McLeod's because they did not carry long guns.

McLeod's testimony creates an issue of fact with respect to Defendants Benjamin, Bilacic, and Draves who wore body armor and carried long guns on the raid. *See, e.g., Pershell v. Cook*, 430 F. App'x 410, 416 (6th Cir. 2011) (affirming denial of summary judgment when plaintiff "provided significant information about the location and conduct of the officers based on his own sensory observations" and "the officers themselves provide[d] accounts of the incident," despite the fact that

10

plaintiff was "unable to see the officers standing above and behind him at the precise moment of the blows to his body"); *Binay*, 601 F.3d at 651 (affirming denial of summary judgment where the officer admitted to facts permitting the inference that he participated, and "the fact that Defendants wore masks during the raid made it exceedingly difficult for Plaintiffs to identify ... which officers engaged in which conduct"); *Senk v. Vill. of Northfield*, No. 91-3823, 1992 WL 92742 at *3, (6th Cir. Apr. 22, 1992) (affirming denial of summary judgment where a witness "stated that five or six officers wrestled [the plaintiff] to the ground, and that there were at least five officers on top of [the plaintiff] when [one of the officers] choked him. Only five officers were present at the time, and [two named defendants] were among that number.").

**(b)** *Supervisory Liability*

The Sixth Circuit has not thoroughly developed this theory of liability, although the language in the cases makes it appear as though it is separate and apart from the framework for municipal liability arising out of a failure to train or properly supervise officers under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 98 S. Ct. 2018 (1978).

**(c)** *Failure to Intervene*

No Defendant is liable for failing to intervene. An officer does not have a duty to intervene if another "officer's act of excessive force occurs so rapidly that [the first] officer lacks 'a realistic opportunity to intervene and prevent harm.'" *Kent v. Oakland Cnty.*, 810 F.3d 384, 402 (6th Cir. 2016) (Suhrheinrich, J., dissenting) (quoting *Wells v. City of Dearborn*, 538 Fed. Appx. 631, 640 (6th Cir.2013)).

A single forceful pull on McLeod's wrists is the type of force that courts find co-defendant officers unable to prevent and thus does not give rise to liability. *See, e.g., Bletz v. Gribble*, 641 F.3d 743, 754 (6th Cir. 2011) (defendant entitled to qualified immunity where co-defendant fired

11

several shots at plaintiff in rapid succession); *Ontha v. Rutherford Cnty.*, 222 F. App'x 498, 506 (6th Cir. 2007) (defendant not liable where he was a passenger in a patrol car and only "purportedly had a six- or seven-second window of opportunity to perceive that [co-defendant driver] was aiming and accelerating the patrol car at [plaintiff] and to take action to thwart this allegedly unlawful pursuit").

### (d) *Burden Shifting*

McLeod contends that "the use of masks by the individual officers … can properly cause burden shifting," and "allow a jury to infer that the other team members were either personally involved or failed to intervene to prevent" the use of excessive force. (ECF No. 50 at PageID.959.) McLeod relies on *Burley v. Gagacki*, 729 F.3d 610 (6th Cir. 2013) (*Burley I*), and *Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016) (*Burley II*). Defendants argue that the *Burley* cases confined burden-shifting to false arrest cases. (ECF No. 56 at PageID.983)

*Burley II* declined to shift the ultimate burden of persuasion to defendants who disguised their identities, but noted that "a less onerous shift of the burden of production" might be appropriate where, as here, a plaintiff is unable to identify a specific defendant because officers concealed their identity. 834 F.3d at 615, n. 5.

The Court agrees with McLeod, at this stage of the case anyway, that shifting the burden of production to the Defendants is appropriate. Defendants' reading of Sixth Circuit precedent on individual liability would essentially immunize officers to excessive force claims so long as they sufficiently disguise their identities and deny personal involvement. This approach will allow plaintiffs to move forward at trial while not "turn[ing] §1983 liability jurisprudence on its head." *Id.* at 615.

### D. SPW Excessive Force Claim

Count IV of the complaint alleges that EST Defendants used excessive force in violation of the Fourth Amendment when some number of Defendants allegedly entered SPW's room during

12

the search, grabbed SPW from his bed, and then threw and held him against a wall. (ECF No. 1 at PageID.14-15.) This allegedly caused SPW to wet himself and injured a rib. (*Id*.) Defendants moved for summary judgment based on qualified immunity "for lack of adequate personal involvement by any of the named individual Defendants." (ECF No. 42 at PageID.471.)

All Defendants are entitled to summary judgment on this claim because SPW's description of the officer who grabbed him from bed matches that of an officer not named as a defendant. SPW testified in his deposition that only one officer grabbed him. (ECF No. 44-5 at PageID.736.) SPW testified that the officer wore camouflage and "kind of like a mask … a hat that had like a net on it." (*Id*. at PageID.733 and 738.) This describes Sergeant Keely, who is not named in this suit. Keely wore a hat with camouflaged netting. The named Defendants wore helmets and body armor.

No other officer present would have had a realistic opportunity to intervene—pulling a person from a bed takes a few seconds, at most. An officer does not have a duty to intervene absent "'a realistic opportunity to intervene and prevent harm.'" *Kent*, 810 F.3d at 402.

**E.      False Arrest**

Count VI of the complaint alleges a false arrest in violation of the Fourth Amendment. (ECF No. 1 at PageID.17-18.) McLeod argues that the circumstances surrounding her detention during the execution of the search warrant "escalated into a full blown arrest" without probable. (ECF No. 50 at PageID.962-63.)

Defendants are entitled to qualified immunity under *Muehler v. Mena*, 544 U.S. 93, 98, 125 S. Ct. 1465, 1470 (2005). Courts analyze detentions incident to searches under a reasonableness framework. *See Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587 (1981). "An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Muehler*, 544 U.S.

93, 98, 125 S. Ct. 1465, 1470 (2005) (quoting *Summers*, 452 U.S. at 705, n.19, 101 S. Ct. at 2595 n. 19). This also includes authority to use reasonable force to effect the detention. *Id*. at 98-99, 125 S. Ct. at 1470.

*Muehler* held that detaining an occupant of a house for two to three hours while a search warrant was being executed was reasonable. *Id*. The warrant in *Muehler* sought evidence of gang membership and weapons. *Id*. at 100, 125 S. Ct. at 1470-71. The search warrant in the instant case was similar in that it authorized a search for a suspected drug trafficker, drugs, and firearms used to protect the drug trafficking. Moreover, the Defendants did not personally detain McLeod for more than ten minutes.

## IV. REMAINING COUNTS

Count VII for intentional infliction of emotional distress and Count VIII for abuse of process have been voluntarily dismissed. Count IX for exemplary damages is not a claim, but is a request or demand for relief.

## V. CONCLUSION

For the foregoing reasons, Defendant Buckholtz's motion for summary judgment will be GRANTED as to all counts. Defendants Lass, Salmen, Rod, Fossati, and Bower will be GRANTED summary judgment on all counts. Defendants Benjamin, Bilacic, and Draves will be GRANTED summary judgment on Counts I, II, IV, and VI.

The only count remaining is Count V as to Defendants Benjamin, Bilacic, and Draves. A separate order will enter.

Dated: November 28, 2016                 /s/ Gordon J. Quist  
                                                    GORDON J. QUIST  
                                         UNITED STATES DISTRICT JUDGE